OPINION
Plaintiff-appellant Tim G. Louis appeals from a decision of the Montgomery County Court of Common Pleas affirming the denial of his request for unemployment benefits by defendant-appellee Ohio Bureau of Employment Services ("OBES"). Louis was employed as an apprentice heavy equipment operator by Excel Contracting from September 21, 1998, to October 23, 1998. He was in the third year of a four-year apprenticeship program. Louis had been hired by Excel through his union hall, the International Union of Operating Engineers. Louis performed work for Excel at its project at the Dayton International Airport, where Excel had been hired to renovate the airport's runway. Louis' job duties included driving an off-road, articulated dump truck, and running a compactor.
On October 23, 1998, Louis was told to haul a load of dirt off the job site and onto a fill site, and to compact it. When Louis got to the fill site, he drove the dump truck up onto a pile of dirt that had been previously dumped there. The pile of soft dirt gave way underneath the wheels of the dump truck, causing the truck to overturn. When Excel's superintendent on the project, Everett Dean Hurt, arrived at the scene of the accident, he sharply rebuked Louis for his actions. Louis retrieved his hard hat, and keys to his personal vehicle, and left.
The incident occurred on a Friday afternoon near Louis' regular quitting time. Over the weekend, Louis became uncertain as to whether he had been fired; he therefore called his union representative, Rick Dalton, who advised him to return to work on Monday and determine if he was actually fired, and to obtain a layoff slip if he had been. When Louis returned to work on the Monday following the incident, Hurt, according to Louis' version of events, told him that "he had to let him go[,]" because "he needed someone that was more qualified for the job, that had better skills than [he] did."
Louis had been discharged by Excel Contracting approximately two weeks before the incident involving the dump truck, when one of its superintendents became dissatisfied with how Louis was operating a machine; however, an that occasion, the business agent for Louis' union was able to persuade Excel to permit Louis to return to work.
In September, 1998, Louis filed an application for determination of benefit rights for a benefit year beginning September 13, 1998. He filed an additional claim for the week ending October 31, 1998. On November 23, 1998, the Administrator for OBES issued a determination denying Louis' claim on the grounds that he had quit his job at Excel Contracting without just cause. After Louis filed a request for reconsideration, the Administrator affirmed his initial decision.
Louis filed a second request for reconsideration, which was treated as an appeal to the Unemployment Compensation Review Commission. The matter was referred to a hearing officer, who held a telephone hearing on the matter on January 27, 1999. Louis was represented by Dalton, and Excel Contracting was represented by Hurt, who, in addition to his role as superintendent of the airport project, was also the company's Vice-President. Hurt testified that "[i]n no way, shape, or form" did he tell Louis that he was fired on the night of the accident, but rather, that Louis walked off the job. Louis responded by testifying that he had no intention of quitting when he left the job that evening, but had done so simply because that is what he thought Hurt wanted him to do.
When Hurt was asked by the hearing officer what had caused the truck to turn over, he responded:
 He [Louis] climbed up on a pile of dirt that was — up on a previous dump load of dirt, in about a two acre area that was all flat and level, and he decided to climb up on a pile of dirt and try to dump, a soft pile of dirt. He got up on the dirt and the dirt gave way underneath the wheels and turned the truck over.
Hurt further testified that when he asked Louis why he had done that, Louis "didn't have any reasoning for why."
Louis testified that Hurt's brother, Kenny, had told him "to dump the dirt and spread it out in between the piles[,]" and that "[n]o one had shown me what — actually what they wanted me to do." During his rebuttal, Dean Hurt remarked:
 It's probably one of the dumbest things I've ever seen somebody do, to be quite honest with you. There was no reason for what he had done whatsoever. It'd have been different if the whole side had been full of dirt and he had no choice but to do what he did, but it wasn't — that was not the case."
Shortly after the hearing had concluded, the hearing officer issued a decision rejecting the Administrator's finding that Louis had quit his job with Excel Contracting, but finding, nevertheless, that Excel Contracting had just cause for discharging Louis because he had "carelessly over-turned the employer's dump truck." The hearing officer further found that the fact that Louis was only an apprentice did not excuse his actions. Louis' union representative, Dalton, acting on Louis' behalf, sent a letter to the Commission essentially asking it to reconsider its decision. The Commission treated the letter as an application to institute a further appeal and disallowed it.
Louis appealed the Commission's decision to the Montgomery County Court of Common Pleas pursuant to R.C. 4141.28(C). The matter was referred to a magistrate, who issued a decision recommending that the Commission's decision be affirmed. Louis filed objections to the magistrate's decision. The trial court overruled Louis' objections, adopted the magistrate's decision and entered judgment accordingly.
Louis appeals from the trial court's decision.
Louis' five assignments of error state as follows:
 I. THE TRIAL COURT ERRED IN FINDING THAT TIM LOUIS WAS DISCHARGED FOR JUST CAUSE.
 II. THE TRIAL COURT ERRED IN FAILING TO FIND THAT THE UNEMPLOYMENT COMPENSATION REVIEW COMMISSION ERRED IN DENYING UNEMPLOYMENT BENEFITS TO TIM LOUIS.
 III. THE TRIAL COURT ERRED IN FAILING TO FIND THAT THE UNEMPLOYMENT COMPENSATION REVIEW COMMISSION ERRED IN HOLDING AN APPRENTICE TO THE SAME STANDARD AS A JOURNEYMAN.
 IV. THE TRIAL COURT ERRED IN FAILING TO FIND THAT THE UNEMPLOYMENT COMPENSATION REVIEW COMMISSION'S DECISION IS UNLAWFUL, UNREASONABLE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 V. THE TRIAL COURT ERRED IN DECIDING THAT THERE WAS EVIDENCE OF CARELESSNESS WHEN THERE WAS NO EVIDENCE IN THE RECORD TO SUPPORT A FINDING THAT MR. LOUIS CARELESSLY OVERTURNED THE ARTICULATED DUMP TRUCK. THE TRIAL COURT IMPROPERLY MADE THIS FINDING WHICH IS NOT SUPPORTED BY THE RECORD.
 VI. THE TRIAL COURT ERRED IN FAILING TO RECOGNIZE THAT THE TERMINATION WAS DISPROPORTIONATE PUNISHMENT.
Louis' principal contention is that the trial court erred in affirming OBES's determination that he was fired for just cause and thus ineligible to receive unemployment benefits. We disagree.
"Just cause" is "that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." Irvine v. Unemp. Comp. Bd. of Rev. (1985), 19 Ohio St.3d 15, 17, quoting Peyton v. Sun T.V. (1975), 44 Ohio App.2d 10, 12. "[E]ach case must be considered upon its particular merits." Irvine, supra, at 17, quoting Peyton, supra. An employee is considered to have been discharged for just cause when "the employee, by his actions, demonstrated an unreasonable disregard for his employer's best interests." Kiikka v. Ohio Bur. of Emp. Serv. (1985), 21 Ohio App.3d 168, 169. The employee's conduct need not rise to the level of intentional wrongdoing or misconduct, but there must be a showing of some fault on the employee's part. Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Serv. (1995), 73 Ohio St.3d 694, 698. An employee is considered to have been discharged with just cause when the discharge was due to the culpability of the employee rather than due to circumstances beyond the employee's control. Loy v. Unemp. Comp. Bd. of Rev. (1986), 30 Ohio App.3d 204, 206. "An appellate court may reverse the Unemployment Compensation Board of Review's `just cause' determination only if it is unlawful, unreasonable or against the manifest weight of the evidence." Tzangas, Plakas Mannos, supra, paragraph one of the syllabus.
Here, there was evidence in the record showing that Louis drove an articulated dump truck up onto one pile of dirt in order to dump a second pile of dirt that he was hauling, despite the fact that there was ample flat, level ground available to him to dump the load of dirt he was hauling. Louis never offered a reasonable explanation for his actions, which can be fairly characterized as careless, even reckless, and which demonstrated an unreasonable disregard for Excel Contracting's best interest. An ordinarily intelligent person would have considered Louis' misconduct as a justifiable reason for discharging him.
Louis argues that there was no evidence presented to support a finding that he "carelessly" overturned the dump truck. In support of this argument, he asserts that his employer never argued that he had been careless, but, instead, testified that he had decided to fire Louis to get a more qualified person.
In fact, a review of the testimony shows that Excel Contracting's representative Hurt described Louis' actions as being "probably one of the dumbest things I've ever seen somebody do[.]" Hurt also testified that Louis "didn't seem to be capable of doing the job that I wanted done," but quickly added "that's neither here nor there." The argument that Hurt made to the hearing officer was the same one on which Excel Contracting had prevailed in front of the Administrator, to wit: that Louis had walked off the job and, therefore, had quit. The hearing officer rejected that view. There is evidence in the record to support that finding, and not surprisingly, Louis does not challenge it. However, there is also evidence in the record to support the hearing officer's finding that Louis acted carelessly when he drove his dump truck up onto one pile of dirt in order to dump another load of dirt that he was hauling, in spite of the fact that there was ample flat, level ground on which he could have dumped the load he was hauling. Although he was given an opportunity to do so, Louis never gave a reasonable explanation for his actions.
Louis also asserts that, as an apprentice, he "is still learning the trade and should not be expected to be as skilled as a journeyman." Louis argues that Excel Contracting, knowing that it had hired an apprentice and not a journeyman, should have provided him with greater training in the handling of articulated dump trucks. An "apprentice" is "a person who agrees to work for an employer for a specified time for the purpose of learning the craft, trade or profession in which the employer agrees to instruct him." Black's Law Dictionary (6th Ed. 1990) 101. A "journeyman" is "[a] craftsman who has progressed through an apprenticeship and is qualified in his trade."
Id. at 840.
There was no evidence presented regarding the specifics of the apprenticeship program in which Louis was enrolled. However, as the trial court aptly observed:
 [a]lthough Mr. Louis was an apprentice, he had three years experience. Presumably, an apprentice becomes more skilled in the trade the more he works in it. Three years out of a four-year apprenticeship should garner the amount of knowledge needed to fill the minimal requirements of the job as a heavy equipment operator; mainly, the ability to drive such heavy equipment without incident.
Furthermore, Louis' act of driving up onto one pile of dirt in order to dump another load of dirt when there is ample flat, level ground upon which to dump the load, does not reflect a failure on Excel Contracting's part to properly train Louis, but rather, a failure on Louis' part to use common sense in carrying out his assigned task. We also disagree with Louis' assertion that the hearing officer held him, an apprentice, to the same standard as a journeyman; instead, the hearing officer merely found, correctly, that the carelessness which Louis exhibited in this instance could not be excused simply because of his status as an apprentice.
Louis further argues that discharge was a disproportionate punishment for his actions since the truck was not broken. The record does not indicate whether any damage was done to the $300,000 articulated dump truck which Louis overturned. Nevertheless, assuming no damage was done to the truck, there was expense involved in using a crane to upright the truck, as Louis himself acknowledges. More importantly, this is not the first instance in which Louis failed to use care in handling Excel Contracting's equipment, as he had been discharged earlier by Excel Contracting for improperly handling a machine. Furthermore, Louis' actions in overturning the dump truck were careless to the point of being reckless. An employer in Excel Contracting's position should not have to wait until an employee, who has exhibited carelessness in operating expensive machinery, does substantial economic damage before discharging him.
In light of the foregoing, all of Louis' assignments of error are overruled, and the judgment of the trial court is affirmed.
WOLFF, PJ., and GRADY, J., concur.
(Hon. George M. Glasser, Retired from the Court of Appeals, Sixth Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).